# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

Kuepers Construction, Inc. and Interlachen
Propertyowners Association, Inc.,

                Plaintiffs,

    v.

State Auto Insurance Company,

                Defendant.

**MEMORANDUM OPINION
AND ORDER**
Civil No. 15-449 ADM/LIB

---

Jason Tarasek, Esq., Hammargren & Meyer, P.A., Bloomington, MN, on behalf of Plaintiffs.

Cheryl A. Hood Langel, Esq., McCollum Crowley Moschet Miller & Laak, Ltd., Minneapolis, MN, on behalf of Defendant.

---

## I. INTRODUCTION

On April 14, 2015, the undersigned United States District Judge heard oral argument on

Defendant State Auto Insurance Company's ("State Auto") Motion to Dismiss [Docket No. 3]

and Motion to Dismiss Cross-Claim [Docket No. 19] and Plaintiff Kuepers Construction, Inc.'s

("Kuepers") Motion to Remand [Docket No. 11].  On April 27, 2015, Magistrate Judge Brisbois

granted State Auto's Motion for Realignment of the Parties [Docket No. 43] ("Realignment

Order") and Kuepers subsequently objected [Docket No. 44] ("Objections").  For the reasons

stated herein, State Auto's motions are granted, Kuepers's motion is denied, and Kuepers's

Objections to Judge Brisbois's Realignment Order are overruled.

## II. BACKGROUND[1]

### A. Underlying State Court Action

In 1997, Kuepers Construction, a Minnesota corporation, began building a 24 unit

---

[1] The facts summarized here are taken as alleged in the pleadings.

townhome project in Crow Wing County, Minnesota (the "Project") in a development owned by Interlachen Propertyowners Association (the "Association"), a Minnesota non-profit corporation. Notice of Removal [Docket No. 1-1], Ex. A ("Compl.") ¶¶ 1–4. Kuepers concluded construction in 2001. <u>Id.</u> ¶ 5. Interlachen Properties LLC served as Kuepers's real estate manager and executed the sale of units to individual members of the Association. <u>Id.</u> ¶ 8. Kuepers maintained several insurance policies with State Auto, an Ohio corporation. <u>Id.</u> ¶¶ 2, 14.

Between 2004 and 2009, Kuepers performed periodic repairs of the buildings' siding. <u>Id.</u> ¶¶ 9–11. In 2010, the Association retained an expert to examine property damage at the Project. <u>Id.</u> ¶ 12. The expert informed the Association of multiple issues with the Project, including that the buildings' siding, windows, weather resistive barriers, poly-vapor barriers, and insulation were improperly installed. <u>Id.</u> The expert additionally found that the grading was improper, the project failed to meet certain building codes, and that widespread design and engineering defects contributed to the on-going issues at the property. <u>Id.</u>

As a result of the expert's findings, the Association commenced an action against Kuepers and Interlachen Properties LLC in Crow Wing County District Court. <u>Id.</u> ¶ 13. After receiving notice of the lawsuit, Kuepers's insurer, State Auto, retained counsel to defend against the claims at trial. <u>Id.</u> ¶¶ 15–24. After discovering additional design defects, the Association amended its complaint to bring additional claims for professional negligence and professional negligent design. <u>Id.</u> ¶ 16. Kuepers brought a motion for summary judgment seeking dismissal of the design negligence claim, and this motion was granted on January 4, 2013. <u>Id.</u> ¶ 17. Interlachen Properties LLC's motion for summary judgment was also granted on January 4, 2013. Notice of Removal in <u>Interlachen Prop., LLC v. State Auto Ins. Co.</u>, 14-cv-4380

(JRT/LIB) [Docket No. 1-1], Ex. A ¶ 29.

Prior to trial of the remaining claims asserted against Kuepers, State Auto raised for the first time several coverage defenses in a new reservations of rights letter, claiming that these defenses limited or precluded Kuepers's coverage for certain damages.  Id. ¶¶ 21–22.  Based on the representations of the defense counsel retained by State Auto, Kuepers believed that its interests were protected.  Id. ¶¶ 22–25.  Following a jury trial, judgment was entered in favor of the Association against Kuepers in the amount of $2,147,000.  Id. ¶¶ 26–28.  The state court required that Kuepers post a supersedeas bond for the same amount, or face attachment of its assets to fulfill the judgment.  Id. ¶ 29.  State Auto's retained counsel initially advised Kuepers that it would post the supersedeas bond on Kuepers's behalf; however, State Auto subsequently refused to post the bond.  Id. ¶¶ 30–31.

## B.  **Miller-Shugart** Agreements

In response to State Auto's "abandonment" of Kuepers, on July 28, 2014, Kuepers entered into a Miller-Shugart settlement agreement with the Association wherein Kuepers stipulated to the entry of judgment against it in exchange for the Association agreeing to pursue fulfillment of the judgment solely from State Auto ("Miller-Shugart agreement").[2]  Id. ¶¶ 37–45; McCollum Aff. [Docket No. 6] Ex. 12.  The Crow Wing County Court approved the settlement agreement and entered judgment for the Association in the amount of $2,940,875.15, reflecting the jury verdict amount and subsequent costs, disbursements, and interest.  Id. ¶ 56; Tarasek Decl. [Docket No. 14] Exs. C, D.  It is this Miller-Shugart agreement that is the subject of the

_____

[2] Minnesota allows for a plaintiff-claimant and a defendant-insured to enter into a settlement agreement which is only collectible from the insurer.  See Miller v. Shugart, 316 N.W.2d 729 (Minn. 1982).  Such agreements are known as "Miller-Shugart agreements."

instant action.

In addition to the above referenced agreement, the Association entered into two additional Miller-Shugart agreements.  On August 28, 2014 the Association executed an agreement addressing the design claims with Kuepers concerning the James River Insurance Company ("James River"), Kuepers's other insurer.  McCollum Aff. Ex. 13. The parties in this agreement stipulated to a judgment of $2,000,000.  Id.  James River commenced a declaratory-judgment action in federal court against the Association and Kuepers related to this agreement. Id. Ex. 6.  That action is also assigned to the undersigned.  See James River Ins. Co. v. Interlachen Propertyowners Assoc., 14-cv-3434 (ADM/LIB).

The Association also executed a third Miller-Shugart agreement on August 28, 2014 with Interlachen Properties LLC as to State Auto.  McCollum Aff. Ex. 14.  Interlachen Properties LLC thereafter commenced a declaratory judgment action in state court against the Association, Kuepers, and State Auto.  Id. Ex. 17.  On October 17, 2014, State Auto removed that action to federal court on the basis of diversity jurisdiction, asserting that Interlachen Properties LLC fraudulently named Kuepers and the Association as Defendants.  Id. Ex. C.  This action (the "Interlachen Properties LLC action") was assigned to the Honorable John R. Tunheim.  See Interlachen Prop., LLC, 14-cv-4380 (JRT/LIB).  On January 7, 2015, Judge Brisbois granted State Auto's Motion for Realignment and the parties were realigned so that Interlachen Properties LLC, the Association, and Kuepers are named as plaintiffs and State Auto is the sole defendant.  Id. Ex. E.  Interlachen Properties LLC's Motion to Remand and Objection to Judge Brisbois's Realignment Order are currently pending before Judge Tunheim.

The total of the stipulated judgments in the three Miller-Shugart agreements is

$7,000,000.15.  McCollum Aff. Exs. 12, 13, 14.

**C.  The Instant Action**

Kuepers filed the instant action on December 3, 2014 in Crow Wing County District Court.  Compl.  The action originally named State Auto and the Association as defendants and asserts seven claims.  Id.  Count One seeks declaratory judgment against both State Auto and the Association, alleging that State Auto breached its obligation to Kuepers under its insurance policies and, as a consequence, State Auto must satisfy the $2,940,875.15 judgment entered pursuant to the Miller-Shugart agreement between Kuepers and the Association.  Id. ¶¶ 51–56. The remaining counts are all asserted against State Auto based on its alleged failure to fulfill its obligations under the insurance policies and post a supersedeas bond in the state court action. These claims sound in breach of contract, breach of fiduciary duty, breach of the implied duty of good faith and fair dealing, estoppel, waiver, and reimbursement of attorneys' fees.  Id. ¶¶ 57–92.  The Association subsequently filed a cross-claim against State Auto for declaratory judgment and garnishment and a counterclaim against Kuepers for garnishment.  Def. Interlachen Prop. Assoc., Inc.'s Answer, Cross-Cl., and Countercl. [Docket No. 10] ¶¶ 42–52.

On February 5, 2015, State Auto removed this case to federal court based on diversity of citizenship.  Notice of Removal ¶ 4.  In its notice of removal, State Auto claimed that the Association had been fraudulently joined as a defendant in an attempt to defeat federal diversity jurisdiction.  Id.  After the case's removal, State Auto filed Motions to Dismiss Kuepers's claims and the Association's cross-claims.  Additionally, Kuepers filed a Motion to Remand the action back to state court.

On April 16, 2015, two days after this Court heard oral argument on State Auto's

Motions to Dismiss and Kuepers's Motion to Remand, Magistrate Judge Leo L. Brisbois heard State Auto's Motion for Realignment. Min. Entry [Docket No. 42]. State Auto argued that the Association should be realigned as a plaintiff in this action "to reflect the parties' actual interests." State Auto's Mot. for Party Realignment [Docket No. 33]. Judge Brisbois granted State Auto's Motion on April 27, 2015. <u>See</u> Realignment Order.

## III. DISCUSSION

### A. Motion for Party Realignment

As noted above, State Auto removed this action to federal court claiming actual diversity based on the fraudulent joinder of the Association as a defendant. Kuepers filed its Motion to Remand on February 26, 2015. At that time, State Auto had yet to move for realignment and Kuepers remained the sole Plaintiff in this action. In its Motion to Remand, Kuepers argues that State Auto's fraudulent joinder argument is meritless, and therefore the Court lacks subject matter jurisdiction because complete diversity of citizenship between the parties does not exist. While the remand issue was pending, Judge Brisbois granted State Auto's motion for realignment. Accordingly, the Association was realigned as a co-plaintiff, leaving State Auto as the sole defendant and ensuring complete diversity in the action. Kuepers now objects to Judge Brisbois's Order.

#### 1. Standard

A district court judge will not modify or set aside a magistrate judge's ruling on a nondispositive matter unless the ruling is clearly erroneous or contrary to law. D. Minn. LR 72.2(a); <u>see also</u> 28 U.S.C. § 636(b)(1)(A). A decision is "clearly erroneous" when, although some evidence supports it, "the reviewing court on the entire evidence is left with the definite

and firm conviction that a mistake has been committed." Chakales v. Comm'r of Internal Revenue, 79 F.3d 726, 728 (8th Cir.1996) (citation omitted). "A decision is 'contrary to law' when it fails to apply or misapplies relevant statutes, case law or rules of procedure." Knutson v. Blue Cross & Blue Shield of Minn., 254 F.R.D. 553, 556 (D. Minn. 2008) (citation and quotation omitted). Courts in this district have characterized this standard of review as "extremely deferential." Reko v. Creative Promotions, Inc., 70 F. Supp. 2d 1005, 1007 (D. Minn. 1999).

### 2. Jurisdiction to Consider Motion for Realignment

Kuepers first argues that State Auto's Motion for Realignment was not properly before Judge Brisbois. According to Kuepers, because State Auto removed this action on the basis of fraudulent joinder, the Court only has limited temporary jurisdiction to make a determination solely on whether the non-diverse defendant, in this case the Association, was indeed fraudulently joined. Kuepers therefore contends that Judge Brisbois erred in ruling on the Motion for Realignment prior to this Court issuing a decision on Kuepers's Motion to Remand, which would necessarily resolve the issue of whether the Association was fraudulently joined—which in turn controls diversity jurisdiction. State Auto responds that if the Court has jurisdiction to consider fraudulent joinder, it implicitly also has jurisdiction to consider realignment because "both require the Court to address the same basic issue." State Auto's Resp. to Pl.'s Objection to Ord. for Realignment [Docket No. 46] ("Response to Objections") 3.

Kuepers cites to Filla v. Norfolk S. Ry. Co., 336 F.3d 806 (8th Cir. 2003) and Murphy v. Aurora Loan Servs., LLC, 699 F.3d 1027 (8th Cir. 2012), for the proposition that when a non-diverse defendant has been joined and a party removes based on diversity under 28 U.S.C. § 1441(b), the court only maintains temporary jurisdiction to decide whether the non-diverse

defendant was fraudulently joined. However, as emphasized by Judge Brisbois, neither <u>Filla</u> nor <u>Murphy</u> explicitly address the issue of whether a court may consider the alignment of parties separate from the issue of fraudulent joinder. Critically, maintaining jurisdiction to consider an issue of realignment prior to determining whether diversity jurisdiction is present appears to be a common practice in many federal courts. <u>See</u> <u>e.g.</u>, <u>Chi., R.I. & P.R. Co. v. Stude</u>, 346 U.S. 574, 578 (1954) (first realigning a non-resident defendant before determining that remand was proper); <u>City of Vestavia Hills v. Gen. Fid. Ins. Co.</u>, 676 F. 3d 1310, 1314 (11th Cir. 2012) (finding that the district court did not err in realigning a named defendant as a plaintiff before concluding that complete diversity was present); <u>Lott v. Scottsdale Ins. Co.</u>, 811 F. Supp. 2d 1220, 1223 (E.D. Va. 2011) (collecting cases and stating that "[t]he first question presented—whether post-removal party alignment to create diversity is permissible—is easily answered in the affirmative based on settled authority in this circuit and elsewhere"); <u>Hidey v. Waste Sys. Int'l, Inc.</u>, 59 F. Supp. 2d 543, 545–46 (D. Md. 1999) (realigning parties and then determining that diversity jurisdiction existed to support removal); <u>but</u> <u>see</u> <u>Huntsman Corp. v. Int'l Risk Ins. Co.</u>, 08-1542, 2008 WL 4453170, at *6 (S.D. Tex. Sept. 26, 2008) ("[W]hile there is authority supporting both the proposition that realignment may be used to satisfy diversity jurisdiction in removed actions and the proposition that realignment is not appropriate when diversity was not present when the action was removed, the trend in this circuit disapproves of using realignment after removal to cure a defect in removal jurisdiction.").

At least one other court within the Eighth Circuit has first considered realignment of the parties in the context of a motion for remand before then examining the issue of fraudulent joinder. In <u>JBB Invs. LLC v. Fazoli's Franchising Sys. LLC</u>, the plaintiffs moved for remand

based on a lack of complete diversity.  No. 8-3, 2008 WL 2568468, *2 (E.D. Ark. June 25, 2008).  A defendant responded that another non-diverse defendant should be realigned as a plaintiff.  Id.  The court first evaluated this realignment argument and concluded realignment of the non-diverse defendant was not warranted.  Id. at *3.  Only after this determination did the court turn to the issue of whether the non-diverse defendant was fraudulently joined.  Id. at *4. The court ultimately found that no fraudulent joinder occurred and remand was therefore proper. Id.

Given the precedent in multiple federal districts where courts have examined realignment of the parties before determining whether removal based on diversity was warranted, Judge Brisbois's decision to rule on the Motion to Realign prior to this Court deciding Kuepers's Motion to Remand was not clearly erroneous.

### 3.  Adversity of the Parties

The Court next turns to the gravamen of Kuepers's objection—that there is no legitimate basis for the Association's realignment as a plaintiff.

Alignment of the parties in a complaint is not conclusive in determining whether diversity of citizenship exists.  Universal Underwriters Ins. Co. v. Wagner, 367 F.2d 866, 870 (8th Cir. 1966).  Rather, a federal court is obligated to "look beyond the pleadings, and arrange the parties according to their sides in the dispute."  City of Indianapolis v. Chase Nat'l Bank of City of N.Y., 314 U.S. 63, 69 (1941) (quotation omitted).  When examining whether realignment is appropriate, courts generally look to whether "parties with the same ultimate interests in the outcome of the action are on the same side."  JBB Invs. LLC, 2008 WL 2568468 at *3 (quotations omitted).  "In the Eighth Circuit, to determine whether to realign [ ] defendants as

plaintiffs, the Court must decide whether any actual and substantial conflict exists between [the] defendant and [the plaintiff], regardless of whether it concerns the primary issue in dispute." PW Shoe Lofts, LP v. State Auto Prop. & Cas. Ins. Co., No. 10-2241, 2011 WL 2295068, at *4 (E.D. Mo. June 7, 2011) (citing Universal Underwriters Ins. Co., 367 F.2d at 870; Hartford Accident & Indem. Co. v. Doe Run Res. Corp., No. 8-1687, 2009 WL 1067209, at *3 (E.D. Mo. Apr. 21, 2009)).

The Court agrees with Judge Brisbois's conclusion that "the question of whether there exists a substantial, actual conflict between [Kuepers and the Association] is readily and easily resolved." Realignment Order at 11. Kuepers pleads only one claim against the Association, Count One for declaratory judgment regarding the parties' rights under Kuepers's insurance policies with State Auto.[3] However, at the time this action was filed, Kuepers and the

---

[3] Even though this Count was pled against "all defendants," the Court notes that it actually is solely directed to State Auto:

> 53. Kuepers is entitled to a declaratory judgment pursuant to Minnesota Statutes Section 555, et seq. declaring the parties' rights under the Policies.
>
> 54. Kuepers is entitled to a declaratory judgment that State Auto owed it a defense in the Crow Wing County District Court matter styled The Interlachen Propertyowners Association v. Kupers Construction, Inc., d/b/a Kuepers, Inc. And Interlachen Properties, LLC, et al., File No. 18-CV-11-5-61 and that State Auto breached its contractual obligation to defend.
>
> 55. Kuepers is entitled to a declaratory judgment that State Auto owed Kupers indemnification for the claims asserted in The Lawsuit and that State Auto breached its contractual obligations of indemnity.
>
> 56. Kuepers is further entitled to a declaratory judgment that, as a direct and proximate result of State Auto's breach of its contractual obligations, State Auto has an immediate obligation to satisfy a judgment against Plaintiff in

Association had already entered into the Miller-Shugart agreement whereby Kuepers stipulated to the entry of judgment against it in the underlying construction litigation in exchange for the Association's assurance that it would move to collect the judgment solely from State Auto. McCollum Aff., Ex. 12. Kuepers and the Association are not challenging the validity of the Miller-Shugart agreement itself. Rather, both parties share the common interest of requiring State Auto to satisfy the judgment in question.

As noted by Judge Brisbois, there is no risk that the Association and Kuepers will revert to adverse positions, as can occur in actions where a Miller-Shugart agreement is declared unenforceable. See Corn Plus Co-op. v. Cont'l Cas. Co., 516 F.3d 674, 682 (8th Cir. 2008). Pursuant to the terms of their settlement, the Association agreed that it cannot revert and seek fulfillment of the judgment from Kuepers, even in the event the Miller-Shugart agreement is later found to be unenforceable, void, or unreasonable. See McCollum Aff., Ex. 12. Indeed, the Eighth Circuit has upheld such waivers. Corn Plus Co-op., 516 F.3d at 682 (holding that it was not appropriate to reinstate a claimant's underlying tort claims against an insurer when the parties entered into a Miller-Shugart agreement that included an explicit provision disallowing the claimant to pursue collection against the insured in the event "for whatever reason, [the claimant] is not successful in recovering against the [p]olicies on its claims.").[4]

_____

        the amount of Two Million Nine Hundred Forty Thousand Eight Hundred
        Seventy Five dollars and Fifteen cents ($2,940,875.15) entered by the
        Crow Wing County District Court on August 11, 2014.

Compl. ¶¶ 51–56.

    [4] The Association did assert a counterclaim against Kuepers for garnishment. However, this garnishment claim does not represent an actual or substantial conflict between the parties

Both Kuepers and the Association seek the same outcome: State Auto paying the $2,940,875.15 judgment in the state construction litigation. A further telling indication of the parties' aligned interest is that both parties are represented by the same counsel in this action. As the Court discerns no actual or substantial conflict between Kuepers and the Association, Judge Brisbois's Order to Realign was not clearly erroneous. The Association's realignment as a plaintiff now properly reflects the Association's true interest in this litigation.

### 4. Direct Action Under 28 U.S.C. § 1332(c)(1)(a)

Kuepers's final objection contends that even if the parties were realigned in accordance with Judge Brisbois's Order, realignment still defeats diversity jurisdiction and therefore remand is proper.[5] Specifically, Kuepers states that if the Association were realigned as a plaintiff, 28 U.S.C. § 1332(c)(1)(a) mandates that State Auto be considered a resident of Minnesota. If State Auto was deemed a Minnesota resident, the Court would be divested of subject matter jurisdiction because complete diversity would not exist. In response, State Auto claims the citizenship provision of § 1332(c)(1)(a) applies only to "direct actions" by an insured against an insurer, and the instant lawsuit does not qualify as such an action.

Pursuant to the federal diversity jurisdiction statute, a corporation is deemed "a citizen of any State by which it has been incorporated and of the State where it has its principal place of business." 28 U.S.C. § 1332(c)(1)(a). The statute further contains an exception related to "direct

---

because, as discussed, the Miller-Shugart agreement precludes such a claim.

[5] Judge Brisbois noted in his Order that the realignment determination does not "require the Court to address the effect of any realignment on subject matter jurisdiction" and, therefore, he did not determine whether diversity was present in light of § 1332(c)(1)(a). Realignment Order at 10. However, because Kuepers raised this argument in both its Objections and its Motion to Remand, the implications of realignment on diversity will be addressed here.

actions" involving insurers:

> [I]n any direct action against the insurer of a policy or contract of liability insurance, whether incorporated or unincorporated, to which action the insured is not joined as a party-defendant, such insurer shall be deemed a citizen of [ ] every State . . . of which the insured is a citizen.

Id. Kuepers argues that if the Association were realigned as a plaintiff, this lawsuit would constitute a direct action against an insurer where the insured is not joined as a defendant. Under Kuepers's proposed application of the statute, realignment would defeat diversity jurisdiction as the Plaintiffs (Kuepers and the Association) are citizens of Minnesota and the sole defendant (State Auto) would likewise be deemed a Minnesota citizen.

Kuepers relies on Reko v. Creative Promotions, Inc., in support of its contention that actions seeking to enforce Miller-Shugart agreements are "direct" pursuant to the diversity statute. 70 F. Supp. 2d 998 (D. Minn. 1999). In Reko, the trustees of individuals who died in a plane crash entered into a Miller-Shugart agreement with the tortfeasor when the tortfeasor's liability insurer refused to defend or provide coverage. Id. at 1000. The trustees subsequently commenced a garnishment action in state court seeking to establish coverage and collect the judgment, and the liability insurer subsequently removed. Id. Seeking remand, the trustees argued that the federal court lacked diversity jurisdiction pursuant to § 1332(c)(1)(a). Id. Evaluating the Minnesota garnishment statute in the context of a Miller-Shugart agreement, the Magistrate Judge granted the motion for remand, concluding that the action constituted a "direct action" within the meaning of § 1332(c)(1)(a). Id. at 1004.

The Reko court noted that § 1332(c) was amended in response to direct action statutes in Louisiana and Wisconsin. Id. at 1002. These statutes permitted injured parties to sue a tortfeasor's insurer directly without joining the tortfeasor as a defendant, thereby enabling

13

diversity jurisdiction in cases where the injured individual and the tortfeasor were residents of the same state, but the tortfeasor's insurer was considered a resident of a different state. Id. The Magistrate Judge concluded that a Minnesota garnishment proceeding was a direct action:

> Considering the purpose of 28 U.S.C. § 1332(c)(1), to prevent suit against an insurer in a federal court when both the injured party and the insured are citizens of the same state, even where several steps have to be taken before an injured third party can directly sue the tortfeasor's insurer, the result is the same. When the injured party and insured are citizens of the same state, Congress has expressed an intent that the insurer should not create diversity jurisdiction to bring the case in federal court. To find that the Minnesota garnishment procedure in the context of a Miller Shugart settlement is not a "direct action" within the meaning of § 1332(c)(1), would defeat the Congressional intent.

Id. at 1004. This Court affirmed the Magistrate Judge's Order. Reko, 70 F. Supp. 2d 1005.

Upon reexamination and further development of the case law, the Court no longer finds the reasoning of Reko persuasive and therefore reverses course to join with a multitude of courts in concluding that a suit brought against an insurer for the insurer's independent wrongs is not "direct" within the context of § 1332(c)(1)(a). See e.g., Beckham v. Safeco Ins. Co. of Am., 691 F.2d 898, 901–02 (9th Cir. 1982) (finding no "direct action" when the injured party "seek[s] to impose liability on [the insurer] for [the insurer's] own tortious conduct," such as bad faith refusal to settle claims and intentional and negligent infliction of emotional distress); Fortson v. St. Paul Fire & Marine Ins. Co., 751 F.2d 1157, 1159 (11th Cir. 1985) (finding no "direct action" where the injured party sued tortfeasor's insurer based on insurer's failure to settle in good faith); Cunningham v. Twin City Fire Ins. Co., 669 F. Supp. 2d 624, 628–29 (D. Md. 2009) (finding no "direct action" where the injured party sued insurer for insurer's intentional misrepresentation and tortious interference with contractual relations); Kelly v. State Farm Mut. Auto Ins. Co., 764 F. Supp. 1337, 1339 (S.D. Iowa 1991) (finding no "direct action" where the

injured party brought suit against insurer for breach of duty of good faith and fair dealing).

Relying on the clear legislative history of the provision, these courts have "uniformly defined the term 'direct action' as used in [§ 1332(c)(1)] as those cases in which a party suffering injuries or damage for which another is legally responsible is entitled to bring suit against the other's liability insurer without joining the insured or first obtaining a judgment against him." Eltsefon v. State Farm Mut. Auto. Ins. Co, 826 F. Supp. 2d 922, 925 (E.D. Va. 2011) (quoting Beckham, 691 F.2d at 901–02). Simply because an injured party sues an insurer does not automatically give way to the conclusion that the lawsuit is a "direct action." Rather, to constitute a "direct action" the action must arise out of the conduct of the tortfeasor. See Fortson, 751 F.2d at 1159 (finding that a case is only a "direct action" where "the cause of action against the insurance company is of such a nature that the liability sought to be imposed could be imposed against the insured"). As noted by the Second Circuit, generally the "rule is that the proviso does not affect suits against the insurer based on its independent wrongs: such as actions brought against the insurer either by the insured for failure to pay policy benefits or by an injured third party for the insurer's failure to settle within policy limits or in good faith." Rosa v. Allstate Ins. Co., 981 F.2d 669, 675 (2d Cir. 1992).

The Eleventh Circuit's City of Vestavis Hills v. General Fidelity Ins. Co. is particularly instructive and relevant here. 676 F.3d 1310 (11th Cir. 2012). In that case, plaintiff Vestavis Hills won a judgment in state court against tortfeasor Cameron Development Corporation ("Cameron"), but Cameron's insurer, defendant General Fidelity Insurance ("General Fidelity") subsequently denied coverage. Id. at 1312. Pursuant to a state statute, Vestavis brought an action in state court to recover the judgment amount from General Fidelity, naming both General

Fidelity and Cameron as defendants.  Id.  General Fidelity removed to federal court, although both Cameron and Vestavia were citizens of the same state.  Id.  The district court denied Vestavia's motion to remand for lack of diversity, realigning Cameron as a plaintiff on the basis that both Vestavia Hills and Cameron had the shared interest of General Fidelity providing coverage.  Id.  The Eleventh Circuit affirmed denial of the remand motion and found that realignment did not result in a "direct action" as contemplated in 28 U.S.C. § 1332(c), stating that "Vestavia Hills could not have brought this action against Cameron, as the single count relates to insurance and Vestavia Hills has already obtained judgment against Cameron."  Id. at 1315.

Here, Kuepers asserted seven claims against State Auto:  (1) declaratory judgment; (2) breach of contract; (3) breach of fiduciary duty; (4) attorneys' fees; (5) waiver; (6) estoppel; and (7) breach of implied covenant of good faith and fair dealing.  As in City of Vestavis Hills, the claims are directed at the actions of the insurer, not the underlying liability of the tortfeasor. Kuepers could not properly assert these claims independently against the insured Association because they allege State Auto's attempts to avoid payment under the policies and failure to adhere to defense obligations in the underlying state court action.  Kuepers and the Association previously litigated the issue of tortfeasor liability in the state court action, resulting in the $2,940,875.15 judgment against Kuepers and the subsequent Miller-Shugart agreement.  "[I]t is well-established that claims arising from an insurer's independent actions during negotiations with an injured third party, such as failure to settle within policy limits or in good faith, are not 'direct actions' under § 1332(c)(1)."  Eltsefon, 826 F. Supp. 2d at 927 (citing Rosa, 981 F.2d at 675).  Finally, and importantly, Kuepers is not even the injured party in this case, but rather the

16

insured tortfeasor.  See Eltsefon, 826 F. Supp. 2d at 925 (defining a "direct action" as "an action

by an injured party against an insurer to recover for damages caused not by the insurer but by its

insured, who is not joined in the action").  These claims cannot be considered a direct action

within the meaning of § 1332(c)(1)(a) and therefore the realignment of the Association does not

defeat diversity.

## B.  Motion to Remand

Prior to Judge Brisbois's ruling on realignment, Kuepers moved to remand.  Kuepers

argued that this Court lacked subject-matter jurisdiction because the parties were not completely

diverse (with Kuepers and the Association both citizens of Minnesota) and that the Minnesota

Declaratory Judgment Act dictates that the Association be named in the suit.  State Auto

countered that remand was not appropriate because the Association was fraudulently joined for

the sole purpose of defeating diversity jurisdiction.  Judge Brisbois's Realignment Order,

however, has since cured the jurisdictional concern in this case, ensuring complete diversity of

the parties.

Kuepers now posits that Judge Brisbois's realignment allows for the unjust outcome of

State Auto sidestepping the fraudulent joinder issue.  See Andalusia Enters, Inc. v. Evanston Ins.

Co., 487 F. Supp. 2d 1290, 1295 (N.D. Ala. 2007) (stating that the federal removal statute

"contemplates the determination of the question of removability using the lineup of the parties at

the time of removal, unless that lineup is facially improper").  Kuepers's argument is unavailing.

Although Kuepers is correct in its assertion that the Minnesota Declaratory Judgment Act

required it to name the Association as an interested party in this action, the act does not mandate

that a party deemed indispensable under the statute must specifically be named as either a

plaintiff or a defendant; that is, the statute does not dictate what side of the "v." an indispensable party should be placed on. See Minn. Stat. § 555.02. When evaluating the parties actual underlying interests in this case, Judge Brisbois correctly concluded that the Association is more aptly named as a plaintiff. Furthermore, as summarized above, with federal courts frequently engaging in the practice of addressing realignment based on the parties' interests prior to evaluating remand, the Court cannot conclude that Judge Brisbois's decision to rule on realignment before this Court evaluated remand was clearly erroneous. There is now complete diversity in this case. As such, the issue of remand based on lack of diversity is moot and the Court need not engage in a fraudulent joinder analysis. Kuepers's Motion to Remand is denied.

## C. Motion to Dismiss

The Court next turns to State Auto's Motion to Dismiss. State Auto argues that the present action is duplicative of the earlier-filed Interlachen Properties LLC case pending before Judge Tunheim. See Interlachen Properties LLC., 14-cv-4380 (JRT/LIB). Kuepers counters that the instant case "involves a different settlement, different parties, different policy language and different underlying facts" and therefore dismissal is inappropriate. Pl.'s Mem. Opp'n State Auto's Mot. Dismiss [Docket No. 27] 2. A careful examination of the issues and claims arising in both actions compels the conclusion that this action is indeed duplicative or parallel to the earlier-filed Interlachen Properties case. Therefore, this case will be dismissed.

Generally, federal courts have a "virtually unflagging obligation . . . to exercise the jurisdiction given them." Co. River Water Conserv. Dist. v. United States, 424 U.S. 800, 817 (1976). The Eighth Circuit, however, has articulated "a prudential limitation on the exercise of federal jurisdiction" based on duplicity in multiple federal proceedings. Mo. ex rel. Nixon v.

18

Prudential Health Care Plan, Inc., 259 F.3d 949, 953 (8th Cir. 2001).  "Although no precise rule has evolved with regard to the handling of instances where identical issues are raised in cases pending in different federal courts, the general principle is to avoid duplicative litigation."  Brewer v. Swinson, 837 F.2d 802, 804 (8th Cir. 1988) (citing Co. River, 424 U.S. at 817).  As such, in instances where federal courts are simultaneously exercising jurisdiction over the same matter, one federal court may defer to another based on "considerations of '[w]ise judicial administration, giving regard to conservation of judicial resources and comprehensive disposition of litigation.'"  Co. River, 424 U.S. at 817 (quoting Kerotest Mfg. Co. v. C–O–Two Fire Equip. Co., 342 U.S. 180, 183 (1952)).[6]

The threshold issue in evaluating whether to abstain due to existing concurrent federal litigation is "whether the proceedings are, in fact, duplicative."  Ritchie Capital Mgmt., L.L.C. v. Jeffries, 849 F. Supp. 2d 881, 888 (D. Minn. 2012) (citing Brewer, 837 F.2d at 804).  As stated by the Eighth Circuit, "a plaintiff should not be allowed to litigate the same issue at the same time in more than one federal court."  Blakley v. Schlumberger Tech. Corp., 648 F.3d 921, 932 (8th Cir. 2011) (quotations omitted); see also Mo. ex rel. Nixon, 259 F.3d at 954 ("Plaintiffs may not pursue multiple federal suits against the same party involving the same controversy at the same time.").  Complete identity between parallel actions is not required.  Nat'l Indem. Co. v. Transatl. Reins. Co., 13 F. Supp. 3d 992, 998 (D. Neb. 2014).  Instead, "the crucial inquiry is one of 'substantial overlap' between the parties and issues being litigated."  Id. (quoting Save Power

---

[6] In its memorandum supporting the Motion to Dismiss, State Auto references both the doctrines of res judicata and federal comity (or the "first-to-file" doctrine), stating that they are the "most relevant" to the present situation.  State Auto's Mem. Supp. Mot. Dismiss [Docket No. 5] 8.  The Court, however, believes that State Auto's duplicity argument is better analyzed under the general principles articulated here.

Ltd. v. Syntek Fin. Corp., 121 F.3d 947, 950-51 (5th Cir. 1997)).

Substantial overlap exists between the instant action and the Interlachen Properties LLC case such that the litigation is duplicative and dismissal of this action is warranted. First, the Court notes that all parties named in the instant lawsuit are likewise parties to the Interlachen Properties LLC action. In arguing that dismissal is not appropriate, Kuepers emphasizes that the parties in the corresponding actions are not identical. While Interlachen Properties LLC is not named as a party to this lawsuit, this fact does not preclude a finding of duplicity. The interests of the parties named here (Kuepers, the Association, and State Auto) will remain in play after this case's dismissal since they are named parties in the Interlachen Properties LLC action. In other words, no party will be foreclosed of an opportunity to represent their interests in this matter.

Furthermore, federal courts have found concurrent litigation in state courts involving non-identical parties duplicative where the interests of non-identical parties are aligned. See Samuels Grp., Inc. v. Hatch Grading & Contracting, Inc., 697 F. Supp. 2d 1042, 1051 (N.D. Iowa 2010) (collecting cases). As stated in Section III.A.3 above, the interests of Interlachen Properties LLC, the Association, and Kuepers are unquestionably aligned; these parties all seek recovery from State Auto related to the underlying state court litigation.

Second, the Interlachen Properties LLC case arises out of the same factual background as the present action. The Complaint in Interlachen Properties LLC includes a similar factual overview of the underlying state court litigation. See generally Interlachen Properties LLC, 14-cv-4380 (JRT/LIB), Compl. [Docket No. 1-1]. Additionally, the Interlachen Properties LLC Complaint references both the Miller-Shugart agreement between the Association and

Interlachen Properties LLC (from which the Interlachen Properties LLC action arose) and the Miller-Shugart agreement between the Association and Kuepers pertaining to indemnification from State Auto (from which this action arose). Id. ¶¶ 43–44, 53–54. The Complaint also states that both Miller-Shugart agreements originated in response to the common underlying state court construction litigation. Furthermore, the cross-claims Kuepers asserted against State Auto in the Interlachen Properties LLC action—now direct claims upon the parties' realignment—pled facts that are nearly identical in all material respects to those listed in the instant action.[7]

Third, substantial overlap exists in the actual claims pled by the parties in each action. In its cross-claims against State Auto in the Interlachen Properties LLC action, Kuepers asserts four of the same claims as it brings in the instant action: declaratory judgment, breach of contract, attorneys' fees, and breach of implied duty of good faith and fair dealing. See Def. Kuepers's Ans. Crosscl. Against State Auto [Docket No. 28], 14-cv-4380 (JRT/LIB). Kuepers now argues that the claims in the Interlachen Properties LLC action cannot be considered duplicative because "Kuepers' amended cross[-]claim moots that concern." Pl.'s Mem. Opp'n State Auto's Mot. Dismiss at 5. This argument has no merit. The "amended" cross-claims referred to by Kuepers are currently only proposed claims as 21 days have passed since the claims were originally asserted and Kuepers has neither moved the Court to amend nor obtained State Auto's permission to amended. In fact, State Auto denied Kuepers permission to amend "because the amended cross-claims inexplicably changed Kuepers's claims into Interlachen Properties' claims." Def. State Auto's Reply Mem. Supp. Mot. Dismiss [Docket No. 30] 2. As Kuepers's

---

[7] The Complaint here contains slight wording adjustments compared to the cross-claims in Interlachen Properties, as well as the addition of Paragraph 33.

claims in the Interlachen Properties LLC action have yet to be amended and assert four of the same claims brought in the instant action, the Court concludes that substantial overlap exists between Kuepers's claims in both actions.[8]  Furthermore, the counterclaim and cross-claims asserted by the Association in the instant action will likewise remain at issue in the Interlachen Properties LLC action.  Here, the Association originally brought a counterclaim against Kuepers for garnishment and cross-claims against State Auto for declaratory judgment and garnishment. See Def. Association's Ans. Cross-cl. and Countercl. [Docket No. 10].  These same claims were asserted by the Association as cross-claims in the Interlachen Properties LLC action, and therefore the Association's interests will remain protected upon this case's dismissal.  See Def. Association's Ans., Cross-cl. and Countercl. [Docket No. 27], 14-cv-4380 (JRT/LIB).

Finally, the Court finds that "considerations of wise judicial administration" mandate dismissal of the instant case.  See Brewer, 837 F.2d at 804.  In dismissing this action, the Court will conserve judicial resources by preventing two federal judges from simultaneously examining two actions arising from the same underlying facts to resolve substantially the same issues between Kuepers and State Auto.  The Court will likewise avoid a scenario where piecemeal litigation could potentially produce inconsistent determinations regarding Kuepers's right to indemnification and defense coverage from State Auto.  The Court cannot endorse a course of action which would allow Kuepers to litigate the same issues involving the same parties in front of two different judges within this district.  This action is therefore dismissed.

---

[8] Kuepers pled three claims against State Auto in the underlying action which were not asserted in the Interlachen Properties LLC case; claims for breach of fiduciary duties, waiver, and estoppel.  A scheduling order has not been issued in the Interlachen Properties action and thus no amended pleadings deadline has passed.  Kuepers would therefore be free to move to amend to add those claims which were not originally pled in the Interlachen Properties action.

## IV.  CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein, **IT IS HEREBY ORDERED** that:

1.      Kuepers's Motion to Remand [Doc. No. 11] is **DENIED**;

2.      Kuepers's Objection to the Magistrate Judge's Grant of Defendant State Auto Insurance Company's Motion for Realignment of the Parties [Doc. No. 44] is **OVERRULED**;

3.      State Auto's Motion to Dismiss [Doc. No. 3] is **GRANTED**;

4.      State Auto's Motion to Dismiss Interlachen Propertyowners Association, Inc.'s Cross-Claim [Doc. No. 19] is **GRANTED**; and

5.      Kuepers's Complaint [Docket No. 1] is **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

                                        BY THE COURT:


                                        _____s/Ann D. Montgomery_____
                                        ANN D. MONTGOMERY
                                        U.S. DISTRICT JUDGE


Dated:  July 13, 2015.